## Logan, Todd, and Christian Turnpike Road Company *vs* Glass.

COVENANT.

APPEAL FROM THE MUHLENBURG CIRCUIT.

*Demurrer. Notice.*

*Case* 133.

JUDGE MARSHALL delivered the opinion of the Court.

*May* 29.

THIS action of covenant was brought on the 18th of June, 1841, by the Logan, Todd and Christian Turnpike Road Company against David Glass, to recover the amount of fourteen calls, (making an aggregate of $270,) upon ten shares of stock subscribed by the defendant in the capital stock of said company. The declaration having been adjudged bad on demurrer, and judgment thereon rendered for the defendant, the only question presented by the record, is upon the sufficiency of the declaration; and no objection being urged against it, except as to its averment of notice to the defendant, of the calls made by the plaintiffs upon the subscribers, for the several instalments of their subscription, as alledged in the declaration, no other point will be considered in this opinion.

The case stated.

The covenant sued on binds the defendant to pay fifty dollars for each share subscribed by him, "in such manner and proportions, and at such times as shall be required by the President and Managers of said Company, and agreeably to an act of the General Assembly of Kentucky, incorporating said Company, approved 16th of February, 1838." The declaration, after setting forth the various requisitions of payment by the President and Managers, amounting to $270, and that no part of the said calls, the last of which was due in February, 1841, had been paid, avers that due notice of the manner, proportions, and times said payments were required, hath been given to said defendant heretofore, to-wit: on the 1st day of March, in the year 1841, by John H. Wood, who they aver was their agent and Treasurer. 2. That

LOGAN, TODD &
CHRISTIAN T. P.
Co.
vs
GLASS.

due notice had been given to said defendant, of the man-
ner, &c. agreeably to said act; and 3. That due notice
of the manner, proportions, and times, &c. hath been
given said defendant by publication, giving thirty days'
notice in three newspapers, one printed in Hopkinsville,
one in Princeton, and one in Russellville, and that the
same hath been demanded of him at the Circuit afore-
said.

With respect to the second of these averments, viz:
that due notice was given agreeably to the act, we are of
opinion that whatever might be said of its sufficiency,
after verdict, it is bad upon demurrer. Upon the other
averments, the question is, whether the charter of this
Company provides any specific mode of notice, and if so,
whether the declaration shows, by either of these aver-
ments, that the prescribed mode has been pursued; or,
whether either of these modes would be sufficient to ren-
der the defendant liable on his covenant, though the char-
ter should be found to have prescribed a different mode,
or to have made no provision on the subject.

*Where the stat-
ute of incorpora-
tion of a Turn-
pike Road Com-
pany prescribes
the specific man-
ner in which no-
tice of calls
made on stock-
holders for por-
tions of the stock
shall be given, a
general aver-
ment of notice is
not good on de-
murrer.*

Upon recurring to the act of incorporation of February,
1838, (*Sess. Acts,* 390,) it is found to contain but few
specific provisions, and none upon this particular subject.
The only notice mentioned in the act is that to be given
by the Commissioners for receiving subscriptions of the
fact that $20,000 have been subscribed, and of the time
and place at which the stockholders shall meet to elect a
President and Managers; and this notice is required to be
published in some newspaper printed in Russellville or
Hopkinsville. But the 6th section provides that when
certain work shall be done on the road, the Company
may erect gates and collect one half of the rates of tolls
authorized by the charters of the Bardstown and Louis-
ville Turnpike Road Company; and the 7th section en-
acts, that the general provisions of said charter of the
Bardstown and Louisville Turnpike Road Company, and
the several acts and amendments thereto, shall apply to
the Company hereby incorporated, and are made part of
this charter, except so much thereof as may be inconsis-
tent with the provisions of this act.

*Act of incorpo-
ration of the Lo-
gan and Todd T.
P. R. Co. (Sess.
Acts. 1838, 390,)
reference to the
charter of the
Bardstown and
Louisville T. P.
Road Company.*

It appears that on the 23d of December, 1831, (*Sess. Acts*, 193,) an act was passed incorporating "the Bardstown and Louisville Turnpike Company," which, like the act of 1838 just noticed, contains but few provisions, and by reference, vests in the President and Managers the same power, &c. and subject to the same limitations, &c. as are vested by law in the Louisville Turnpike Company; and upon tracing up the charter of the Louisville Turnpike Company, we find that it was incorporated by the 9th and 10th sections of an act establishing a Turnpike on the road from Georgetown to Cincinnati, approved February 8, 1819, (*Sess. Acts*, 725,) and that by reference, the same powers are vested in the Louisville Turnpike Company as are vested in the Fayette and Madison Turnpike Company, by an act of February 3, 1818, incorporating that Company, and which is to be found in the *Session Acts* of 1817–18, page 523. This last named act prescribes that the Managers shall give thirty days' notice of the payments required from the subscribers of stock, in two of the papers published in Lexington—in which it also requires that notice of the time when the books would be opened for subscription, by the Commissioners named for that purpose, should be published.

The 9th section of the act of 1819, which incorporates the Louisville Turnpike Company, and prescribes the duties of the Commissioners, by reference to those of the Commissioners for opening the books of the Fayette and Madison Turnpike Company, provides "that the notices to be given by the said Commissioners shall be published in two newspapers in Louisville, instead of two newspapers in Lexington," and makes no specific provision, as to notice of the payments to be required from the stockholders, but re-enacts so much of the other charter referred to as can or may apply to the road authorized by the charter of the Louisville Turnpike Company.

If the acts above noticed, and the intermediate acts, by which the charter of the Louisville Turnpike Company was, from time to time, revived and modified in particulars not affecting the present question, be the acts referred to in the 7th section of the charter of the Logan, Todd

LOGAN, TODD & CHRISTIAN T. P. Co.
*vs*
GLASS.

The act incorporating the Bardstown and Louisville T. P. Road Co. refers to the charter of the Louisville T. P. Co. which is part of the act 1819, (*Sess. Acts.* 725) which refers to the Fayette and Madison T. P. R. Co. passed in 1817–18, (*Sess. Acts.* 523,) required notices of calls on stock to be published in the Lexington papers.

The act of 1819, concerning Louisville T. P. Co. required notice by commissioners of opening the books, by reference to the Fayette & Madison T. P. Co's charter, should be published "in Louisville; instead of two papers in Lexington."

and Christian Turnpike Road Company, then it is clear that the question whether thirty days' notice of the calls made by publication in the newspapers mentioned in the declaration, was sufficient to make the stockholders liable to pay the instalments as called for, is precisely the same as the question whether thirty days' notice of a call by the Louisville Turnpike Company, upon its stockholders, published in two newspapers printed in Louisville, would be sufficient to make them liable. For the only express provision on the subject, in the whole series of acts, is that contained in the original "Fayette and Madison Turnpike" act, which provides for publication in two newspapers in Lexington. There is precisely as much in the act of 1838, chartering the Logan, Todd and Christian Turnpike Road Company to indicate that the notice of their calls may or shall be published in the newspapers at Russellville or Hopkinsville, as there is in the charter of the Louisville Turnpike Company to show that their notices of calls upon their stockholders might or should be published in two newspapers at Louisville, and there is nothing in the charter of the Bardstown and Louisville Turnpike Company to vary the case as to that Company.

Was the Louisville Turnpike Company then, or the Bardstown and Louisville Turnpike Company bound to give notice of calls upon stockholders, by publishing in the Lexington papers, because there is no specific provision in any of the acts for publishing such notice in the Louisville or Bardstown papers? Or must it have given the notice to each stockholder personally, because there is no express provision authorizing that Company by name, to give notice by publication, in any newspaper? Or was it absolved from giving any notice at all, and authorized to require payment without notice, because there is no express provision on the subject of such notice, applicable, in terms, to the Louisville Turnpike Company, or to the Bardstown and Louisville Turnpike Company?

A general answer to these questions is, that it was the It was the obvious intention of the Legislature that notices of obvious intention of the Legislature to adopt into the charter of the Louisville Company, so much of the "Fayette and Madison" charter as was applicable, *muta-*

*tis mutandis*, to the subject of the new charter; and to make the two charters as nearly identical as the difference in the corporate name, in the amount of capital, the Commissioners by whom the books were to be opened for subscription, and other circumstances growing out of the difference and the distance between the roads, for the construction of which each charter was intended to provide, would admit of. The same powers, and privileges, and duties, and restrictions, were intended to be established in the one case as in the other, differing in their modes of exercise so far, and so far only, as such difference is expressed in the second charter, or must be necessarily implied on applying the first charter to the subject and object of the second. It is not the letter but the substance and spirit, not the language but the principles of the first charter that are adopted into the second. The second, third, and fourth charters in the series which has been noticed, clearly intend, so far as they refer to the first, to establish in the several companies which they create, in the Commissioners who are appointed to usher the corporate body into existence, in the corporation itself, and in its officers and individual members, the same powers, privileges, duties, and restrictions with regard to each other, and to strangers, and to the object to be accomplished, as is established in the first Company by the first charter; and these powers, privileges, duties, and restrictions are neither greater nor less in one case than in the other, except so far as they are specifically made so by the successive acts of incorporation.

If the Managers of the Louisville Company, or of the Bardstown and Louisville Company, or of the Logan, Todd and Christian Company, were not entitled to demand payment of the instalments of stock called for by them without having given to the stockholders personal notice of the call before it was due, and the stockholders were not bound to pay without such notice. then the power and privilege of the Managers in these Companies would be smaller and less efficient, and the privilege of the stockholder would be greater than in the Fayette and Madison Company. If on the other hand, the Managers were not bound to give any notice, but that the stockhol-

LOGAN, TODD & CHRISTIAN T. P. Co. *vs* GLASS.

calls made by the managers on the stockholders of the Logan, Todd and Christian T. P. Road Company should be published in papers nearest to the scene of operations and the residence of the parties; publication in the newspapers of Russellville, Hopkinsville and Princeton was sufficient.

ders were bound to take notice themselves of the acts of the Board of Managers, in making requisitions, and at once to comply with them, though they were not even published, this would be giving to the Managers greater power, and imposing on the stockholders greater duties than belong to these parties in the first Company. In either case there would be an essential difference in their internal relations between the three last Companies and the first; a difference which cannot be presumed to have been intended, merely because the latter charters contain no express provisions on the subject. On the contrary, as the latter charters refer to and adopt the first, so far as it is applicable and not inconsistent with their own provisions, the absence of any provision on this subject is equivalent to an express negation of any new principle in regard to it, and an express adoption of the principle of the original charter on which the others were modeled. Moreover, among the numerous charters of Turnpike and other Companies, in which stock is to be subscribed and paid, for purposes of public interest, we do not know of one in which the Managers, authorized to call for the payment of the stock by instalments, are required to give personal notice of the call to the stockholders before it can be regarded as being due: nor of one in which they are not required to give notice of some sort. The general, and perhaps universal practice in such cases is to require or allow in the charter, that the calls shall be notified by publication in one or more newspapers nearest to the scene of operations, and to the probable residence of subscribers. Nor can it be doubted that this practice, which may be called the principle of these laws, so far as the subject of notice is concerned, is, in a general point of view, beneficial to all parties. It is beneficial to the Company at large, and thus to the individual members, by saving the expense and delay of repeated personal notice to numerous individuals, and by furnishing means, reasonably certain, of actual, and timely, and simultaneous notice to all, whereby a regular and general payment, at the time required, may be expected. It saves the Managers from the responsibility and trouble of causing individual notices to be served, and enables them to

calculate with reasonable certainty, the resources of the Company. To the individual stockholders too, it furnishes, as already intimated, such means of actual knowledge, that few indeed of those who feel an interest in the work to be accomplished, or an anxiety to fulfil their obligations to the Company, can be supposed to remain ignorant. In a word, it gives such notoriety to the call, among those interested, and affords such general means of knowledge as leaves little excuse for ignorance on the part of any, and constitutes a reasonable basis for implying notice to all.

Whether a charter, which, containing detailed provisions within itself, and making no reference to any other act of incorporation, should be entirely silent on the subject of notice to the stockholders, of the manner, proportion, and time of payments required by the Managers, should be understood as dispensing entirely with notice, or as requiring personal notice, or as impliedly allowing notice by publication in the nearest newspapers, on the ground of the reasonableness and general prevalence of that mode of notification in such cases, need not be decided. If the charter of the "Bardstown and Louisville Turnpike Company," be the one referred to in the 7th section of the act incorporating the Logan, Todd and Christian Turnpike Company, then this charter adopts the general provisions and principles of the original charter of the Fayette and Madison Turnpike Company, and among them the principle that thirty days' notice of the required payments, published in the newspapers nearest the road, is sufficient. In this case the notice was published, (according to the averments of the declaration,) in three newspapers, printed in three towns through which, by the act of incorporation, the road is to pass. And if any doubt could still be entertained of the sufficiency of this notice, because this act of incorporation does not name the paper in which the notice may be published, and because, therefore, the attention of stockholders may not have been directed to these particular papers for information on the subject, this doubt must be removed by the fact that the act of incorporation itself, by requiring the notice of the first meeting of the stockholders

LOGAN, TODD &
CHRISTIAN T. P.
Co.
vs
GLASS.

to be published in some newspaper printed at Russellville or Hopkinsville, recognizes two of the papers used in this case as proper media for the communication of notice to the stockholders, and thus directs attention to them for information with regard to the Company, and furnishes a reasonably certain basis for implying that the Legislature looked to the publication in these papers alone, or in them in conjunction with others on the road, of all such notices as might properly be published by the Managers. It is proper to state, that in addition to the charter of the "Louisville Turnpike Company," and all the amendments thereto, and besides the charter of the "Bardstown and Louisville Turnpike Company," enacted in December, 1831, there is also an act of January 9, 1831, (*Sess. Acts of* 1830–31, *p.* 37,) incorporating the "Louisville and Bardstown Turnpike Road Company," which is complete in itself, makes no reference to any other charter, and neither professes to be amendatory of any other act, nor appears, so far as we have discovered, to have been directly amended itself. This act may be the one referred to in the 7th section of the act incorporating the Logan, Todd and Christian Turnpike Company as the "said charter of the Bardstown and Louisville Turnpike Road Company." And this act contains an express provision that notice of the calls for payment of stock shall be given in the papers published at Bardstown and Louisville, for at least thirty days. Whether this be or not the charter referred to in the 7th section of the act now under consideration, and we are not to be understood as deciding or intimating an opinion on that subject, it adheres to the principle that a publication of the call in newspapers nearest the road which is the subject of the act, is proper and sufficient. And if this be the charter referred to, and of which the general provisions are adopted by the 7th section of the act before us, it would be inconsistent with the principle of those provisions to say, that the papers properly prescribed as the medium of notice in that charter, were adopted, with its general provisions, into this. The question arising on this comparison is however precisely the same as that arising on comparison of the act incorporating the "Louisville

LOGAN, TODD &
CHRISTIAN T. P.
Co.
vs
GLASS.

Turnpike Company," with the charter of the Fayette and Madison Turnpike Company, to which it refers; and it would be just as unreasonable, on comparing these various charters, to say that the calls of the Louisville Company should have been published in the Lexington papers, because the Fayette and Madison Company was required to publish in the Lexington papers, as that the calls of the Company now before us should have been published in the Bardstown and Louisville papers, because the Louisville and Bardstown Company were required to publish in those papers. We have discussed the question under the supposition that the charter of the Bardstown and Louisville Turnpike Company was the one referred to in the 7th section of the charter of 1838, because, although the question of construction was, in principle, the same on that as on the other supposition, the unreasonableness of the construction which we have rejected seemed to be more striking in the former than in the latter case, and because although the name of neither Company, as incorporated, corresponds precisely with that mentioned in the 7th section, the name of the "Bardstown and Louisville Turnpike Company" seems to correspond rather more nearly than that of the "Louisville and Bardstown Turnpike Road Company." The fact, if it exists, that the charter of the latter Company had been acted on, and the other had not, would probably be decisive on this point.

In every view of the case, we are of opinion that the averment of notice, published in the papers mentioned, is sufficient. It is unnecessary to say whether, in the absence of any such notice, the notice averred to have been given by the Treasurer of the Company, after all the calls were due, would have been sufficient to sustain the action.

The judgment is reversed and the cause remanded, with directions to overrule the demurrer to the declaration, and for further proceedings.

*Morehead & Reed* for appellant: *Monroe* for appellee.